**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRPS LLC, | No. CV-18-08249-PCT-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Tenney Realty Services LLC, | |
| Defendant. | |

Plaintiff BRPS LLC believes Defendant Tenney Realty Services LLC is a "successor-in-interest" to a defunct entity. Years ago, BRPS's predecessor-in-interest obtained a judgment against that defunct entity and the present litigation is BRPS's attempt to hold Tenney Realty responsible for that judgment. Tenney Realty believes BRPS's attempt is barred by a four-year statute of limitations. BRPS argues a renewable ten-year limitations period applies. Because Arizona law does not provide a specific limitations period for suits of this type, a four-year limitations period applies and this suit is time-barred. Therefore, Tenney Realty is entitled to summary judgment.

**BACKGROUND**

The Court must view the facts in the light most favorable to BRPS but there do not appear to be any disputes regarding the facts relevant to the limitations dispute. Rather, the only disagreement is over which limitations period applies, a purely legal question. *Levinson v. Jarrett ex rel. Cty. of Maricopa*, 88 P.3d 186, 188 (Ariz. Ct. App. 2004) (determining correct statute of limitations is question of law). Resolving that legal

question, however, requires an understanding of the convoluted background facts.

Randolph Tenney and his wife, Debra Tenney, have been involved in the real estate business since at least 2002. As of August 2002, the Tenneys each owned a 50% interest in R&D Dart Realty Service, Inc. ("R&D") in Pinetop, Arizona. (Doc. 39-1 at 23). The Tenneys worked at R&D, which derived its income "from commissions earned from the purchase and sale of real property in the Show Low, Arizona area." (Doc. 34 at 10). On August 1, 2002, R&D entered into a "Franchise Agreement" with GMAC Real Estate, LLC. (Doc. 39-1 at 14). That agreement allowed R&D to use GMAC's "trademarks, service marks, . . . and other commercial symbols" in conducting R&D's real estate business. (Doc. 39-1 at 14). The agreement was for ten years. (Doc. 39-1 at 34).

As a result of a downturn in real estate sales in 2008, R&D's business dried up and, in March 2009, R&D "closed its doors." (Doc. 34 at 10). Sometime prior to that, R&D informed GMAC that R&D would be ceasing operations. (Doc. 34 at 14). GMAC viewed R&D's decision to cease operations as a breach of the franchise agreement. R&D and GMAC then negotiated a settlement agreement which required R&D make several payments to GMAC. The settlement agreement was drafted to require the signature of both Randolph Tenney and Debra Tenney but only Randolph signed it. Around the time R&D ceased operations, Randolph formed a new company with an unrelated individual. That new company was "commercially known as Realty Executives White Mountains" and seems to have been in the same business R&D had been. (Doc. 34 at 11).

On October 26, 2009, GMAC sent the Tenneys a letter. That letter recounted the history of R&D ceasing operations and the subsequent negotiation of the settlement agreement. The letter stated GMAC had recently learned R&D "did not cease operation . . . but instead merged in some fashion with Realty Executives White Mountains." That alleged merger was "an unauthorized transfer, and a manifest violation of the non-compete provision of the Franchise Agreement." Based on Debra Tenney's failure to sign the settlement agreement, the letter stated GMAC was "rescind[ing]" the settlement agreement and, pursuant to the franchise agreement, R&D owed GMAC $318,442.13. The Tenneys

allegedly were personally responsible for a portion of that amount. Neither R&D nor the Tenneys paid the amount demanded by GMAC. GMAC did not, however, take immediate steps to collect that amount.

GMAC waited until February 2012 to try to collect from R&D and the Tenneys. That month GMAC filed a lawsuit in Arizona state court against R&D and the Tenneys. The complaint included multiple claims but the central claim was that R&D had breached the franchise agreement. In November 2012, while that litigation was pending, the Tenneys filed for personal bankruptcy. The following month, December 2012, the Tenneys formed a new company, Tenney Realty. During their bankruptcy proceedings, the Tenneys filed a "Consolidated Disclosure Statement and Plan of Reorganization." That document, which was provided to GMAC in June 2013, explicitly stated the Tenneys had formed Tenney Realty after filing their bankruptcy petition. (Doc. 34 at 23) ("Since the filing of the petition, the Debtors have formed Tenney Realty Services, LLC d/b/a Tenney Properties."). It is unclear what became of the Tenneys' bankruptcy but it appears the bankruptcy resulted in the Tenneys dropping out of the lawsuit filed by GMAC. Thus, in May 2013, judgment was entered solely against R&D and in favor of GMAC for more than $340,000. (Doc. 39-2 at 2).

Through a series of transactions, BRPS became the successor-in-interest to all rights and claims GMAC possessed regarding R&D. (Doc. 39-2 at 6). Despite having a substantial judgment against R&D, BRPS apparently made no effort to collect on that judgment until October 2018 when BRPS filed the present suit against Tenney Realty.[1]

BRPS's original complaint alleged a version of the facts set forth above and contained a single claim for relief styled as "Declaratory Relief - Successor Entity Liability." That claim sought a declaratory judgment that Tenney Realty was the "successor entity to R&D" such that Tenney Realty was liable on the judgment obtained against R&D. (Doc. 1 at 6). Tenney Realty filed an answer. (Doc. 10). Upon reviewing the complaint, the Court became concerned that BRPS had not identified an underlying

---

[1] It is important to note that BRPS had previously renewed the judgment on May 4, 2018. (Doc. 39-2 at 8).

cause of action to support its claim for declaratory relief. *See Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013) ("The Declaratory Judgment Act creates only a remedy, not a cause of action."). Thus, the Court instructed the parties to be prepared at the Rule 16 Conference to discuss whether BRPS had stated a plausible claim for relief. After a brief discussion on this topic at the hearing, the Court directed the parties to continue their discussions and inform the Court whether they could agree on the viability of BRPS's suit.

Shortly after that hearing, the parties stipulated to BRPS filing a First Amended Complaint. The proposed amended complaint would substitute the claim for declaratory relief with a claim for "successor liability" against Tenney Realty. (Doc. 24-1 at 7). In response to that stipulation, the Court directed the parties to submit briefs on whether "successor liability is a standalone claim under Arizona law." (Doc. 25 at 1). In those briefs, the parties agreed Arizona law recognizes a standalone claim of successor liability. (Doc. 26, 27). Based on the parties' agreement, the Court granted BRPS's request to amend its complaint. (Doc. 28, 29). A few months later, Tenney Realty filed its motion for summary judgment, arguing a four-year statute of limitations bars BRPS's successor liability claim.

## ANALYSIS

Because this case is proceeding in federal court based on diversity jurisdiction, the Court must apply "the substantive law of [Arizona], including [Arizona's] statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Here, the parties agree the Arizona Supreme Court has not ruled which statute of limitations should apply to a standalone claim for successor liability. Thus, the Court must "predict how [that] court would resolve" the statute of limitations issue. *Id.* In making this prediction, the Court must follow the Arizona Supreme Court's general rule that "[t]he defense of statute of limitations is never favored." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995). And when "there is substantial doubt as to which limitations period governs, the longer period should be applied." *Ins.*

*Co. of N. Am. v. Superior Court In & For Cty. of Santa Cruz*, 800 P.2d 585, 589 (Ariz. 1990).

There is no dispute GMAC believed R&D "merged in some fashion" with another entity in 2009. GMAC's letter to the Tenneys in October 2009 complained about that exact activity. Moreover, the June 2013 bankruptcy disclosure statement sent to GMAC stated the Tenneys had formed Tenney Realty. BRPS does not dispute that GMAC's knowledge of the events in 2009 and 2013 should be imputed to BRPS. Accordingly, BRPS's claim for successor liability might have accrued as early as October 2009 but certainly accrued no later than June 2013. Because the present suit was filed on October 4, 2018, a statute of limitations of less than five years will render BRPS's claim time-barred.

According to the parties, the Court's task is to choose between two limitations periods. The first possibility is found in A.R.S. § 12-550 which states "Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward." This is a "catch-all statute of limitations" that applies when no other limitations period does. *Crook v. Anderson*, 565 P.2d 908, 909 (Ariz. Ct. App. 1977). Tenney Realty argues this statute applies because there is no specific limitations period that governs a standalone claim for successor liability.[2] BRPS disagrees and points to A.R.S. § 12-1551 as the specific limitations period that should be applied.

The language of A.R.S. § 12-1551 is somewhat opaque. That statute provides, in relevant part,

---

[2] In support of its position that § 12-550 applies, Tenney Realty argues Arizona courts have a special preference for looking to the laws of Texas when identifying the appropriate limitations period. It is true that Arizona courts often look to Texas law regarding the proper limitations period because Arizona adopted its limitations periods from Texas. *See Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094, 1098 (9th Cir. 1981) (looking to Texas law for guidance regarding Arizona limitations period). But developments in Texas law that occurred after Arizona adopted the limitations periods are merely "persuasive" and "not controlling." *Gee v. Pima Cty.*, 612 P.2d 1079, 1080 (Ariz. Ct. App. 1980). Thus, instead of looking exclusively to Texas law, Arizona courts have routinely looked to other jurisdictions as well for guidance. *Id.* The parties agree Texas law does not recognize a "successor liability" claim like BRPS is pursuing, meaning it is not helpful to look to Texas law to determine the appropriate limitations period.

> The party in whose favor a judgment is given, at any time within ten years after entry of the judgment and within ten years after any renewal of the judgment either by affidavit or by an action brought on it, may have a writ of execution or other process issued for its enforcement.

A.R.S. § 12-1551(A). As interpreted by the Arizona Supreme Court, this language establishes a "limitations period for the enforcement of a judgment." *Fid. Nat. Fin. Inc. v. Friedman*, 238 P.3d 118, 121 (Ariz. 2010). For present purposes, the crucial portion of the statutory language is the reference to a party being entitled to enforce a judgment "by an action brought on it." In 2010, the Arizona Supreme Court addressed this language in detail. *Id.*

According to the Arizona Supreme Court, the portion of § 1551 stating "an action brought on [a previous judgment]" is referring to "the common law action on a judgment." *Id.* at 121. That is a "specific form of suit." *Id.* at 121. Under Arizona law, "every judgment continues to give rise to an action to enforce it, called an action upon a judgment." *Id.* "The defendant in an action on the judgment . . . is generally the judgment debtor and the amount sought is the outstanding liability on the original judgment." *Id.* In such a case, the complaint should "simply recite the amount owed and seek a judgment on that debt." *Id.* at 123. In responding to such a complaint, "[t]he judgment debtor cannot deny the binding force of the judgment" and can only assert a few defenses. *Id.* at 121. Accordingly, pursuant to the language of § 1551(A), a party that obtains a judgment has ten years to seek enforcement of that judgment by filing an "action on a judgment."

The crucial question, therefore, is whether BRPS's claim for successor liability should be viewed as analogous to an "action on a judgment." If so, BRPS's claim is timely pursuant to A.R.S. § 12-1551. If, however, BRPS's claim is not viewed as analogous to an "action on a judgment," it is time-barred pursuant to the four-year limitations period found in A.R.S. § 12-550.

Looking to BRPS's operative complaint, there is no indication that BRPS is attempting to pursue an "action on a judgment." Instead, the complaint alleges a standalone claim for "successor liability." Throughout this litigation, BRPS has been adamant that

- 6 -

Arizona law recognizes "successor liability" as a standalone claim. For example, shortly after filing the operative complaint, BRPS described its claim in substantial detail. In that submission, BRPS made no mention of an "action on a judgment." Rather, BRPS explained that "under Arizona law a plaintiff may assert a successor liability claim as a standalone cause of action" and "Arizona law clearly recognizes" successor liability as a distinct claim. (Doc. 26 at 4-5).

Given BRPS's statements, there is no basis for concluding BRPS is, in fact, attempting to pursue something analogous to an "action on a judgment." If that had been BRPS's intent, there was no need to allege a "standalone claim" for successor liability nor was there any need to argue that Arizona has recognized such a "standalone claim." Instead, BRPS could have simply stated it was pursuing an "action on a judgment" as contemplated by the Arizona Supreme Court in *Fidelity National Financial. Inc. v. Friedman*, 238 P.3d 118 (Ariz. 2010). Based on BRPS's own repeated descriptions of its claim, the ten-year period for an "action on a judgment" does not apply. Thus, the catch-all four-year limitations period applies.

In seeking to avoid this conclusion BRPS cites a case from the District of Arizona and three cases from other jurisdictions allegedly establishing a standalone claim of successor liability should be governed by the longer statute of limitations applicable to an "action on a judgment." (Doc. 38 at 7). But those cases are not helpful because they either involved a non-existent claim under Arizona law or involved application of state law that differs from Arizona law.

In the case from the District of Arizona the plaintiff had asserted a standalone claim for "alter ego." *Five Points Hotel P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 760 (D. Ariz. 2011). After assuming such a claim existed, the district court concluded Arizona courts would apply the limitations period found in § 1551. *Id.* at 761. Later in that same case, however, the court determined "Arizona law does not recognize alter ego as an independent cause of action" and, based on that, granted summary judgment to the defendant. *Five Points Hotel P'ship v. Pinsonneault*, No. CV-11-00548-PHX-JAT, 2014

WL 1713623, at *5 (D. Ariz. May 1, 2014). On appeal, the Ninth Circuit agreed "alter ego is a procedural mechanism to enforce an underlying claim and not an independent cause of action." *Five Points Hotel P'ship v. Pinsonneault*, 697 F. App'x 549, 550 (9th Cir. 2017). Given the conclusion that alter ego is not a standalone claim under Arizona law, the district court's earlier conclusion regarding the appropriate limitations period applicable to such a claim does not provide meaningful guidance. That is, if alter ego is not a standalone claim recognized by Arizona law, a determination of the limitations period applicable to that non-existent claim is not instructive.

Next, BRPS cites cases from three district courts. Those cases, however, are not useful because they are based on the laws of other states that appear to differ significantly from Arizona law. To reiterate, the Arizona Supreme Court has specifically identified what type of action will qualify as an "action on a judgment" under Arizona law: an "action on a judgment" must "simply recite the amount owed and seek a judgment on that debt." *Fid. Nat. Fin. Inc. v. Friedman*, 238 P.3d 118, 123 (2010). If a suit seeks additional remedies under federal or state law, that suit is "clearly . . . not a common law action on the judgment." *Id.* Given that view of an "action on a judgment," the cases cited by BRPS do not apply.

Starting with the suits from the Eastern District of Virginia and the Eastern District of Pennsylvania, both of those suits involved a variety of claims in addition to claims of "successor liability." *Charles Schwab & Co. v. WS Wealth Mgmt., LLC*, No. 1:16CV0352 (AJT/IDD), 2016 WL 7033699, at *1 (E.D. Va. Dec. 2, 2016) (involving claims for successor liability, fraud, conspiracy, and breach of fiduciary duty); *Madonna v. Francisco*, No. CIV.A. 13-807, 2014 WL 981568 (E.D. Pa. Mar. 13, 2014) (involving claims for successor liability, alter ego, and unjust enrichment). Given the Arizona Supreme Court's guidance that such suits should not be "actions on a judgment," the fact Virginia and Pennsylvania might view those suits differently is irrelevant. *See Fid.*, 238 P.3d at 119, 123 (suit involving "federal racketeering" and state fraud "clearly was not a common law action on the judgment").

As for the case from the Northern District of Illinois, it is unclear whether that suit also involved other claims that would have taken it outside the Arizona Supreme Court's view of permissible "actions on a judgment." *Davila v. Magna Holding Co.*, No. 97 C 1909, 1998 WL 578032 (N.D. Ill. Sept. 3, 1998). But it is clear that the law of Arizona and Illinois differs in that Illinois does not recognize "successor liability [as] a free-standing cause of action." *Id.* at *3. Here, BRPS has been adamant that Arizona recognizes such a standalone claim. Therefore, the very nature of a "successor liability" claim under Illinois law is quite different from such a claim under Arizona law. Given that difference, it would be inappropriate to rely on a case interpreting Illinois law to determine which of Arizona's limitations periods applies.

BRPS never described this suit as an "action on a judgment" but has consistently argued it is pursuing a different type of lawsuit involving a standalone claim for successor liability. Therefore, the ten-year limitations period found in § 1551(A) does not apply.[3] The catch-all four-year limitations period applies. Because it is undisputed that BRPS's claim for successor liability accrued more than four years prior to the filing of this suit, BRPS's claim is time-barred.[4]

///

///

///

///

---

[3] Arizona's rule requiring application of the longer limitations period requires more than *some* level of doubt about the appropriate period. Arizona courts have stressed there must be "substantial" doubt before a court should rely on the longer limitations period. *Hall v. Romero*, 685 P.2d 757, 760 (Ariz. Ct. App. 1984) (applying shorter limitations period because the court was "not in substantial doubt" about which limitations period applied); *Drug, Cosmetic & Beauty Trades Serv., Inc. v. McFate*, 480 P.2d 30, 32 (Ariz. Ct. App. 1971) (applying shorter limitations period because the court had "little difficulty" in concluding the language of longer limitations period did not apply). Here, there is no genuine uncertainty regarding how Arizona courts would view BRPS's claim. Therefore, it is appropriate to invoke the shorter limitations period.

[4] In concluding BRPS's standalone claim for successor liability is time-barred the Court is making no finding regarding the viability of any other approach BRPS might pursue in attempting to enforce the judgment against R&D. In particular, the Court takes no position on the potential preclusive effect of the judgment in this case should BRPS pursue an alternative avenue for enforcing the judgment against R&D.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 34) is **GRANTED**. The Clerk of Court is directed to enter a judgment of dismissal with prejudice in favor of Defendant.

Dated this 26th day of December, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge